UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| HEATHER SUIT, ERIC SUIT, individually and as Guardian ad Litem for BRAELYN SUIT, a minor,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF FOLSOM, FOLSOM POLICE DEPARTMENT, OFFICER KRACHER, STEVE CARSON, and DOES 1-100,<br><br>    Defendants. | CIV. NO. 2:16-00807 WBS AC<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

----oo0oo----

   Plaintiffs Heather and Eric Suit and their minor daughter filed this action under 42 U.S.C. § 1983 based on a car accident that resulted from defendant Officer Kracher's pursuit of defendant Steve Carson.  Defendants City of Folsom (the "City"), Folsom Police Department (the "Department"), and Officer Kracher now move to dismiss plaintiffs' First Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

1

I.  Factual and Procedural Background

On October 26, 2015, Heather Suit was driving her minor daughter to school in Folsom, California. (First Am. Compl. ("FAC") ¶ 23 (Docket No. 6).) While they were on the road, Officer Kracher engaged in a vehicle pursuit of Carson because he suspected Carson of having committed a "non-violent 'cold'" misdemeanor. (Id. ¶¶ 25, 27.) Carson was "driving lawfully" before the pursuit and began driving "recklessly" once Officer Kracher initiated the stop. (Id. ¶ 26.) During the chase, Carson collided with another bystander's vehicle and subsequently collided with plaintiffs' vehicle. (Id. ¶¶ 31, 32, 42.)

Plaintiffs initiated this action based on the injuries they incurred when Carson hit their vehicle. After amending their Complaint in response to defendants' first motion to dismiss, plaintiffs allege five claims in their FAC: (1) 42 U.S.C. § 1983 claim against Officer Kracher for violations of plaintiffs' substantive due process rights under the Fourteenth Amendment; (2) Monell claim under § 1983 against the City; (3) "supervisorial liability" claim under § 1983 against the City and the Department; (4) negligence claim against the City, the Department, and Carson; and (5) loss of consortium claim by Eric Suit against all defendants. The City, the Department, and Officer Kracher now move to dismiss plaintiffs' FAC for failure to state a claim upon which relief can be granted.

II.  Analysis

On a motion to dismiss under Rule 12(b)(6), the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v.

2

Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief' requires more than labels and conclusions . . . ."  Twombly, 550 U.S. at 555 (alteration in original) (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Iqbal, 556 U.S. at 678.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. (internal quotation marks and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In general, a court may not consider items outside the complaint when deciding a motion to dismiss, but it may consider documents of which it can take judicial notice.  Tellabs, Inc. v.

3

Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012).  Defendants submitted a copy of the Felony Complaint and Felony Abstract of Judgment to show that, after his arrest on October 26, 2015, Carson was convicted of burglary, vehicle theft, and fleeing or attempting to elude a pursuing police officer while driving with a willful or wanton disregard for the safety of persons or property. (Docket No. 9-2.)  While the court can take judicial notice of such records, see United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992), the court declines to do so because the criminal charges brought against Carson after the incident are not relevant to defendants' motion to dismiss and would not affect the court's decision.

    1.   Section 1983 Claims

In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  While § 1983 is not itself a source of substantive rights, it provides a cause of action against any person who, under color of state law, deprives an individual of federal constitutional rights or limited federal statutory rights.  Id.; Graham v. Connor, 490 U.S. 386, 393-94 (1989).

In their initial Complaint, plaintiffs alleged violations of their Fourth Amendment rights to be free from

4

unreasonable seizures.  Likely recognizing that they could not allege a violation of the Fourth Amendment in the absence of an intentional seizure, plaintiffs abandoned that theory in their FAC and instead allege only substantive due process violations under the Fourteenth Amendment.  See generally County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998) (holding that an officer's collision into a motorcycle on which plaintiff was riding did not give rise to a cognizable Fourth Amendment violation because, even though the police were in pursuit of the motorcycle, a "seizure" requires "a governmental termination of freedom of movement through means intentionally applied").

        The Due Process Clause of the Fourteenth Amendment "guarante[es] more than fair process" and extends to "a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them."  Id. at 840.  "The touchstone of due process is protection of the individual against arbitrary action of government," Wolff v. McDonnell, 418 U.S. 539, 558 (1974), and "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,'" Lewis, 523 U.S. at 846 (quoting Collins v. City of Harker Heights, 503 U.S. 115, 129 (1992)).  The Supreme Court has held that official conduct rises to this level only if it "shocks the conscience."  Id.

        The standard used to assess whether conduct "shocks the conscience" depends on "whether the officers had the opportunity for actual deliberation."  Porter v. Osborn, 546 F.3d 1131, 1138 (9th Cir. 2008).  "Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the

5

conscience." Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010). "On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." Id.; see also Porter, 546 F.3d at 1139 ("[W]hen an officer encounters fast paced circumstances presenting competing public safety obligations, the purpose to harm standard must apply.").

In Lewis, the Court recognized the pressure to act quickly when an officer engages in a vehicle chase: "A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders." 523 U.S. at 853. Because of the limited opportunity to deliberate, the Court held in Lewis that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment." Id. at 854.

Since Lewis, the Ninth Circuit rejected the argument that a distinction could be made "between 'emergency' and 'non-emergency' situations involving high-speed chases aimed at apprehending a fleeing suspect" and held that "Lewis requires [the court] to apply the 'intent to harm' standard to all high-speed chases." Bingue v. Prunchak, 512 F.3d 1169, 1177 (9th Cir. 2008). "[I]f a police officer is justified in giving chase, that justification insulates the officer from constitutional attack,

1    irrespective of who might be harmed or killed as a consequence of
2    the chase," and thus the same standard governs the officer's
3    conduct when an innocent bystander is injured.  Onossian v.
4    Block, 175 F.3d 1169, 1171-72 (9th Cir. 1999).
5           In their FAC, plaintiffs allege only that Officer
6    Kracher "continued [the] pursuit with the knowledge and complete
7    understanding that [he] had forced Defendant CARSON to injure[]
8    one bystander, and with a complete understanding that there was a
9    high likely hood [sic] that [his] actions were going to harm
10   Defendant CARSON, as well as other innocent bystanders a second
11   time."  (FAC ¶ 30.)  The FAC also alleges that Officer Kracher
12   continued his pursuit "past a point of reckless indifference."
13   (Id. ¶ 32.)  Perhaps most telling is plaintiffs' characterization
14   of this case as one involving only negligence in the opening line
15   of their opposition brief.  (See Pl.'s Opp'n at 1:2-3 (Docket No.
16   10) ("This litigation involves the negligence of Defendants,
17   wherein a negligent police chase resulted in the injuries and
18   damages to Plaintiffs . . . ." ).)
19          Without the need for much discussion, the Lewis Court
20   easily concluded that allegations that the officer acted
21   negligently, recklessly and carelessly, grossly negligent, and in
22   a conscious disregard of plaintiffs' rights failed to rise to the
23   level of intent or purpose to cause harm.  523 U.S. at 854;
24   accord Bingue, 512 F.3d at 1174.  Here, the FAC does not even
25   allege the legal conclusion that Officer Kracher continued his
26   pursuit of Carson with an intent or purpose to cause harm to
27   plaintiffs.  Although plaintiffs allege Officer Kracher said "he
28   was aware the pursuit was dangerous" and "should have called it

off," (FAC ¶ 34), this admission might suggest that Officer Kracher continued the chase in a deliberate indifference to the risks to bystanders, but cannot give rise to the inference that he acted with a purpose to harm those bystanders.

Even assuming plaintiffs alleged an intent or purpose to harm in a conclusory fashion in the FAC, their reliance on Rule 9(b) is misplaced.  While Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), the Supreme Court recognized in Iqbal that such allegations still require sufficient factual support.  As the Court explained, "'generally' is a relative term and, "[i]n the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake" and "merely excuses a party from pleading [] intent under an elevated pleading standard."  Iqbal, 556 U.S. at 686; see also Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015) ("Iqbal makes clear that, Rule 9(b)'s language notwithstanding, Rule 8's plausibility standard applies to pleading intent.").  In the absence of at least a single factual allegation giving rise to the reasonable inference that Officer Kracher acted with a purpose to harm plaintiffs, they cannot allege a cognizable violation of the Fourteenth Amendment.

Nor do plaintiffs allege any facts giving rise to the inference that Officer Kracher's pursuit of Carson was unrelated to a legitimate law enforcement objective.  Plaintiffs appear to argue that Officer Kracher was not justified in initiating the stop because he knew who Carson was and "could have contacted him safely at a later time."  (Pl.'s Opp'n at 5:21-22.)   The FAC

8

1  alleges, however, that Carson was suspected of a "non-violent
2  'cold'" misdemeanor, and plaintiffs do not cite a single case
3  suggesting that Officer Kracher lacked authority to stop Carson.
4  Nor are there any allegations that Officer Kracher attempted to
5  stop Carson with the intent of initiating a high-speed chase in a
6  residential area or had reason to believe that his attempt to
7  stop Carson would lead to a high-speed chase.
8         Once a suspect flees, the Supreme Court has made
9  it clear that the officer has a legitimate law enforcement
10 objective in continuing pursuit until the suspect is apprehended.
11 See Scott v. Harris, 550 U.S. 372, 385 (2007) ("But wait, says
12 respondent: Couldn't the innocent public equally have been
13 protected, and the tragic accident entirely avoided, if the
14 police had simply ceased their pursuit?  We think the police need
15 not have taken that chance and hoped for the best. . . . First of
16 all, there would have been no way to convey convincingly to
17 respondent that the chase was off, and that he was free to go. .
18 . . Second, we are loath to lay down a rule requiring the police
19 to allow fleeing suspects to get away whenever they drive so
20 recklessly that they put other people's lives in danger."); cf.
21 Mullenix v. Luna, 136 S. Ct. 305, 310 (2015) ("The Court has []
22 never found the use of deadly force in connection with a
23 dangerous car chase to violate the Fourth Amendment . . . .")
24        Nor can blame for Carson's decision to flee shift to
25 Officer Kracher simply because the officer did not cease pursuit
26 when Carson drove recklessly.  See Lewis, 523 U.S. at 855 ("[The
27 officer] was faced with a course of lawless behavior for which
28 the police were not to blame.  They had done nothing to cause

9

Willard's high-speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to control traffic, and nothing (beyond a refusal to call off the chase) to encourage him to race through traffic at breakneck speed forcing other drivers out of their travel lanes.").

Because the FAC lacks even a single factual allegation from which the court could reasonably infer that Officer Kracher acted with a purpose to harm unrelated to a legitimate law enforcement objective, plaintiffs fail to allege a cognizable violation of the Fourteenth Amendment necessary to sustain a § 1983 claim against Officer Kracher.  In the absence of an underlying constitutional violation, plaintiffs' Monell and "supervisorial liability"[1] claims similarly fail.  See Simmons v. Navajo County, 609 F.3d 1011, 1021 (9th Cir. 2010); Patel v. Maricopa County, 585 Fed. App'x 452, 452 (9th Cir. 2014). Accordingly, the court must grant defendants' motion to dismiss all of plaintiffs' § 1983 claims.

   2.   State Law Claims

"[A court] may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Because plaintiffs fail to allege a cognizable federal claim and the gravamen of their FAC relies on allegations of negligence under state law, the court declines to exercise

---

[1]   Plaintiffs have not named any individual supervisors as defendants in this action and it appears their "supervisorial liability" claim is simply another attempt to allege a Monell claim against the City and the Department.

10

supplemental jurisdiction over their state law claims. <u>See</u> <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." (internal quotation marks and citation omitted)).

        Similarly, because the court has discretion to consider sua sponte whether to continue exercising supplemental jurisdiction over state law claims even in the absence of a motion to dismiss, <u>Acri v. Varian Assocs., Inc.</u>, 114 F.3d 999, 1003 n.3 (9th Cir. 1997) (en banc), the court also declines to exercise supplemental jurisdiction over plaintiffs' state law claims against Carson.

        IT IS THEREFORE ORDERED that defendants' motion to dismiss plaintiffs' First Amended Complaint be, and the same hereby is, GRANTED and all claims against all defendants are dismissed.

        Plaintiffs have twenty days from the date this Order is signed to file a Second Amended Complaint, if they can do so consistent with this Order.

Dated: August 8, 2016

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE